# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )| |
| ) | |
| v. ) | 02: 07cr0310 |
| ) | |
| HAROLD D. PRICE ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

July 24, 2008

Currently before the Court is the MOTION TO SUPPRESS EVIDENCE filed by Defendant, Harold D. Price (*Document No. 41*).

On May 2, 2008, the Court conducted an evidentiary hearing on the suppression motion at which all parties were represented by counsel who presented and argued the issues skillfully and effectively. Leslie K. Price, the wife of the Defendant, and Trooper Timothy M. Callahan of the Pennsylvania State Police testified on behalf of the government. The Defendant did not testify nor did he call any witnesses on his behalf.

At the conclusion of the suppression hearing, the Court ordered that the record would remain open until May 19, 2008, in order that Defendant could determine if additional State Troopers would be called to testify. On May 19, 2008, counsel for Defendant notified the Court that no additional witnesses would be called, and the record was closed at that time. The Court ordered that counsel for Defendant, if so desired, could file a post-hearing brief on or before June 16, 2008, with the government's response due on or before June 30, 2008. Counsel for defendant requested three (3) extensions of time in which to file his post-hearing brief, which requests were granted. The post-hearing briefs were timely filed after the extensions and the matter is now ripe for disposition.

Based on the testimony and evidence presented at the suppression hearing and the applicable law, the Court enters the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Criminal Procedure 12(d):

**FINDINGS OF FACT**

The facts surrounding the search on May 3, 2007 are basically not contested. On May 3, 2007, Pennsylvania State Police Trooper Timothy Callahan responded to a 911 call regarding an "active domestic" dispute at 15 Lee Avenue, Grove City, Pennsylvania. When Trooper Callahan arrived at the scene, he observed the Defendant, Harold Price, and his friend playing basketball in the driveway of the residence. The Defendant approached Trooper Callahan's vehicle and asked what was going on. Trooper Callahan responded, "I don't know. You tell me. Where's your wife?" (Transcript at 63). Defendant responded that she had walked off.

At about this same time, Pennsylvania State Police Corporal Harmond Silloway arrived at the scene. Trooper Callahan directed Corporal Silloway to try to find "the victim." Within minutes, Corporal Silloway returned to the residence with Mrs. Price, who had a swollen lip, and blood could be seen on her lip and on the right side of her shirt. The decision was immediately made to place the Defendant under arrest for domestic violence because there was an injury. The Defendant was placed in handcuffs and placed in the rear of a patrol car. After being arrested, Defendant remained on the scene for only a few minutes and then was transported by Corporal Silloway and Pennsylvania State Trooper Dan Brennan, another trooper who had arrived at the scene, to the Mercer State Police Barracks for processing. (*Id.* at 66.)

Trooper Callahan remained on the scene to proceed with the domestic investigation. He interviewed the victim, Leslie K. Price, and asked her to fill out a victim statement. While filing out the victim statement, Mrs. Price told Trooper Callahan that she was scared because her husband was "connected." Trooper Callahan responded that he knew that the Defendant was a known drug dealer in the Grove City area, and that "today is the day, if you want to do anything. And [he] asked her, you now, it's how you want to proceed with this. . . . Is there any illegal guns, drugs, anything like that? And that's when she started to explain . . . about the gun." (*Id.* at 70.) Mrs. Price told Trooper Callahan that she recently had observed the Defendant with a semi-automatic handgun in the residence, but that she was uncertain where he kept it.

Trooper Callahan then asked Mrs. Price for consent to search the residence, the detached garage, and the GMC Suburban. She provided verbal consent for the search. Thereafter, Trooper Callahan discovered and seized three (3) semi-automatic firearms, approximately three (3) pounds of marijuana, marijuana smoking devices, two (2) digital scales, and a small amount of cocaine. Mrs. Price denied ownership of the three (3) firearms.

The first firearm was found in a Ziploc plastic bag under the mattress in the marital bedroom. Mrs. Price confirmed that the Defendant had threatened to kill her with that firearm approximately one (1) week prior to the date of his arrest.

Next, Trooper Callahan, along with Trooper Brad Wagner who had arrived at the scene with Trooper Brennan, proceeded to the garage area, which had drawn his suspicions because he had noticed that the windows were blacked out. Mrs. Price accompanied him to the garage. While looking around the garage, Trooper Callahan noticed stairs leading to some sort

of attic.  At the top of the stairs, there was another door with two locks on it.  The troopers asked Mrs. Price if she had keys to this area, and she told them that she did not have a key to the area.  Mrs. Price also told the troopers "that she didn't like to go up there,  or I didn't want to go up there, um, for the fact that Harold smoked marijuana up there, and I didn't want to be around that."   (*Id.* at 53.)[1]  Mrs. Price thereafter gave her permission for the officers to forcibly remove the locks.  The door was thereafter forced open and the troopers entered the area.  In the ceiling of the loft area the second firearm was found, along with marijuana, cocaine, and drug paraphernalia.  After the troopers found the marijuana, Mrs. Price signed a written consent form for the search of the "residence and structure at 15 Lee Ave." to be searched for "contraband, drugs, guns."  See Waiver of Rights and Consent to Search, Govt. Exh. 4.

After completing the search of the loft area, the troopers searched the GMC Suburban truck and found the third firearm, hidden under the cup holder / center console area of the truck.

---

[1]  On cross examination, Mrs. Price testified that she told the troopers that she could not go into the loft area without her husband's permission.  Transcript at 45.  However, on redirect, Mrs. Price testified that she did not recall telling the troopers that she was not allowed to be in the loft without her husband's permission.  Mrs. Price testified that she did not have a key, so she had to ask for a key to go in there.  Further, she testified that she considered that she had the authority to go in to the loft "based on we were married, based on that house belonged to us, the garage belonged to us, the vehicles belonged to us" and that on May 3, 2007, she believed that she had the right to go into the loft.  *Id.* at 54.  Mrs. Price also testified that she "believed that it was owned by both of us.  So I believe I had the authority to give anybody permission to go into something that I own, just like I gave permission for them to search the house."  *Id*. at 55.

On August 28, 2007, a federal Grand Jury returned a three-count indictment which charged Defendant with Possession of a Firearm By A Convicted Felon on or about May 3, 2007, in violation of Title 18, United States Code, sections 922(g)(1) and 924(e).

**CONCLUSIONS OF LAW**

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

*U.S. Const. amend. IV.* However, consent is a well-recognized exception to the prohibition of the Fourth Amendment against warrantless searches. *See Schneckloth v. Bustamante,* 412 U.S. 218, 222 (1973). For the exception to apply, consent must be freely and voluntarily given, *see Schneckloth*, 412 U.S. at 222, by either the individual whose property is to be searched or a third party who possesses common authority over the property. See *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (*citing United States v. Matlock*, 415 U.S. 164 (1974)).

In *Matlock*, the United States Supreme Court considered whether a woman, who represented to the police that she was either the defendant's wife or cohabitant, had authority to consent to a search of their bedroom. The Supreme Court held that the woman's consent was legally sufficient to admit the evidence uncovered in the search, and noted:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-habitants

5

> has the right to permit the inspection in his own right and that the others
> have assumed the risk that one of their number might permit the common
> area to be searched.

*Id.* at 171 n. 7. In *Bolden v. Southeastern Pennsylvania Transp. Auth.*, 953 F.2d 807 (3d Cir. 1991), the United States Court of Appeals for the Third Circuit recognized that "consent may be provided by . . . third parties with substantial interests or responsibilities related to the search or seizure. These third parties include, among others, a party with common authority over the premises or items to be searched. . . ."

Defendant argues that Leslie K. Price, his wife, did not have either actual or apparent authority to consent to the search of the loft or the GMC Suburban truck. In the alternative, the Defendant argues that the law enforcement officers conducted an unconstitutional search because they failed to obtain his consent although he was "at home" when the search commenced. The Court finds both of Defendant's arguments to be without merit.

### A. Actual Authority

Whether a third party has the actual authority to grant entry to law enforcement officers is determined by the test articulated by the United States Supreme Court in *United States v. Matlock*, 415 U.S. 164 (1974), *to wit*: whether the third party has "mutual use of the property . . . [and] generally [has] joint access or control for most purposes." *Matlock,* 415 U.S. at 171. The Supreme Court clarified though that the common "authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements." *Id.* at n.7. The government bears the burden of establishing that the person giving consent had the required authority to do so, *see Rodriguez*, 497 U.S. at 181, and also

6

bears the burden of proving that the consent was voluntary.[2] *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).

In applying the *Matlock* test to this case, the Court finds and rules that Mrs. Price had the actual authority to consent to the search of both the loft and the GMC Suburban based on the presumption of control of the property. "Relationships which give rise to a presumption of control include parent-child relationships and <u>husband-wife relationships</u>." *United States v. Rith*, 164 F.3d 1323, 1330 (10th Cir. 1999) (emphasis added). *See also United States v. Duran*, 957 F.2d 499, 505 (7th Cir. 1992) ("[A] spouse presumptively has authority to consent to a search of all areas of the homestead.")

### B. Apparent Authority

However, assuming *arguendo,* that Mrs. Price did not have actual authority to consent to the search of the loft and GMC Suburban, the Court finds and rules that the search would still be constitutional because the troopers reasonably believed that Mrs. Price had the apparent authority to give consent. In *Rodriguez,* the United States Supreme Court held that a warrantless entry is valid when based on consent of a third party whom police, at time of entry, reasonably (though erroneously) believe to possess a common authority over premises, but who in fact does not have common authority. 497 U.S. at 186.

Here, the record reflects that Mrs. Price told Trooper Callahan that she had been living with the Defendant for sixteen (16) years and had been married to him for the last eight

---

[2] The Court notes that Defendant does not argue that the consent was not voluntary; rather, his argument is focused solely on whether Mrs. Price had the required authority to give consent to the search.

(8) years. In addition, she reported that her name was on the deed as co-owner of the residence and that she was co-owner of the GMC Suburban. Trooper Callahan saw or heard nothing which would call any of this information into doubt.

The Court finds and rules that not only did Mrs. Price have the actual authority to consent to the search of the loft and the GMC Suburban, but that Trooper Callahan had a reasonable belief that Mrs. Price had the requisite apparent authority to grant consent to the search of the loft and the GMC Suburban. *See Rodriquez*, 497 U.S. at 188-89 ("As with other factual determinations bearing upon search and seizure, determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises? If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.")

### C. Police Did Not Have an Obligation to Ask Defendant for His Consent Before They Searched the Loft, GMC Suburban and/or the Bedroom in the Marital Home.[3]

Lastly, Defendant, relying upon *Georgia v. Randolph,* 547 U.S. 103 (2006), argues that the search of the loft, GMC Suburban, and the bedroom were unconstitutional because "the

---

[3] In his Brief, Defendant notes that this argument is necessary to the search of the loft and GMC Suburban only if the Court rules that Mrs. Price had actual and objectively reasonable apparent authority to consent to either of those searches. Defendant also states that this is the only argument available to him with respect to the search of the bedroom in the marital residence. Because the Court has ruled that Mrs. Price had both actual and apparent authority to the search of the loft and the GMC Suburban, the analysis applies to the search of the loft, GMC Suburban, and the bedroom.

police had an obligation to ask Mr. Price for his input into the consent question." The Court finds that Defendant's reliance on *Randolph* is misplaced.

In *Randolph,* the United States Supreme Court rejected the argument that an occupant may give law enforcement valid consent to search the premises shared with another when the other occupant also is present and objects to the search. However, the *Randolph* Court drew the following distinction:

> if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.

*Randolph*, 547 U.S. at 121. The Court acknowledged that it was drawing a fine line, but explained that:

> So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it.

*Id*. at 121-22.

The Supreme Court also was careful to explain that the holdings of *Matlock* and *Rodriquez* "are not to be undercut by today's holding." *Randolph*, 547 U.S. at 121. The facts of this case essentially mirror the facts of *Matlock*. In *Matlock,* the defendant was arrested in the front yard of the house that the police officers wished to search, but for which they had no search warrant. "Although the officers were aware at the time of the arrest that respondent lived in the house, they did not ask him which room he occupied or whether he would consent to the search." *Id.* at 166. Instead, the officers spoke to another resident who voluntarily

consented to the search of the house.  The Supreme Court held that the resident's consent was good against "the absent, non-consenting resident."

In this case, there is no evidence that Defendant was detained for the purpose of removing a potentially objecting tenant.  Defendant was placed under arrest for Simple Assault and Terroristic Threats and transported to the police station for processing.  He had been removed from his residence prior to any statements by his wife with regard to a firearm and prior to any request for consent to search.

## CONCLUSION

Based on the applicable legal principles, and the testimony of Leslie K. Price and Trooper Callahan, the Motion to Suppress Evidence filed by Defendant will be denied.  The Court is satisfied that the search conducted on May 3, 2007, of the loft, GMC Suburban, and the marital bedroom was a valid consent search.  The consent was voluntarily given by Leslie K. Price, the wife of the Defendant and the co-owner of the premises, and Defendant was not removed by law enforcement officers from the premises to avoid a potential objection to the search.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 07cr0310 |
| | ) | |
| HAROLD D. PRICE | ) | |
| | ) | |

**ORDER OF COURT**

AND NOW, this 24th day of July, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that Defendant's Motion to Suppress Evidence is **DENIED.**

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:  Troy Rivetti, Assistant U.S. Attorney
     Email: Troy.Rivetti@usdoj.gov

     W. Penn Hackney,
     Senior Litigation Counsel
     Federal Public Defender's Office
     Email: penn_hackney@fd.org